

FILED

SEP 2 8 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP YU, by his parents PAUL YU and TERESA YU and PAUL YU and TERESA YU individually, | C-87-4737 MHP |
| Plaintiffs, | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| vs. | |
| HILLSBOROUGH CITY ELEMENTARY SCHOOL DISTRICT and SAN MATEO COUNTY DIVISION OF MENTAL HEALTH, | |
| Defendants. | |

This matter came before this court for review of a final decision of a hearing officer (hereinafter "Administrative Law Judge" or "ALJ") of the Office of Administrative Hearings of the State of California pursuant to the Education of the Handicapped Act ("EHA" or "Act"), 20 U.S.C. section 1401 *et seq.* and, in particular, section 1415 of the Act. The court has considered the administrative record and the additional evidence presented at trial, which was conducted a number of years ago. At the close of trial the court indicated its intended decision, but apparently no findings and conclusions were ever issued. These finding and conclusions shall be deemed the final decision of the court and the record of the court's bench order is incorporated herein. To the extent that findings of fact are included in the conclusions of law they shall be deemed findings of fact and to the extent conclusions of law are included in the findings of fact they shall be deemed conclusions of law

FINDINGS OF FACT

At the time of trial plaintiff Philip Yu was eight years and nine months old. He suffers from a pervasive developmental disorder which has been diagnosed as a form of autism. He has been identified as severely handicapped and it is not disputed that he is entitled to the special education and related services provided for by the EHA. As a result Philip is entitled to an Individual Education Plan ("IEP") under the Act. There is no dispute that IEPs were developed for Philip and that his parents were fully informed and cognizant of their rights under the Act including their right to challenge the IEPs and the defendant District's placement pursuant to them at various stages including through a due process hearing. The parents exercised those rights with respect to a 1986 IEP, culminating in a hearing before an ALJ in accordance with the EHA and the pertinent federal and state regulations.

The ALJ conducted the hearing and took testimony over a four-day period with plaintiffs presenting twelve witnesses and defendants presenting six witnesses. The ALJ made detailed and thorough findings in a seven-page, single-spaced decision. The court has reviewed that decision and the transcripts of the testimony. In addition, this court heard the testimony of nine witnesses and received a number of documents into evidence.

The evidence shows that Philip first entered the Hillsborough Elementary School District ("District") in January 1984. Prior to that he had been in programs operated by the County of San Mateo. Pursuant to an IEP conducted on January 10, 1984, he was placed in the Los Prados Severely Emotionally Disturbed Program and remained in that program through the end of the 1984-85 academic term. Pursuant to an IEP meeting held on May 30, 1984, the placement was extended through the 1984-85 term. Philip's parents unilaterally removed Philip from Los Prados in September 1985 and placed him in a private school, Peninsula Children's Center ("PCC") in Palo Alto California. This was done without consultation with, or with the approval of, the District. Nor did the parents avail themselves of the right to a due process hearing. Philip's parents removed him from Los Prados because they were dissatisfied with his performance in that program and believed that PCC would better serve his needs.

2

The January 1984 IEP included a lengthy assessment of Philip's academic, communication, social adaptation, psychomotor and self-help levels. *See* Ex. 73. It set specific goals and timetables to address each of these areas along with measurements to determine achievement of the goals and whether they should be continued or revised. The IEP team recommended a placement in a "highly structured self-contained special class which can meet his communication, behavorial [sic], self-help and academic needs" with "[s]peech and language...provided for three twenty minute periods a week." The team recommended the Los Prados program as an appropriate program to meet the needs set forth in the IEP. The IEP placement summary reflects that a parent attended the meeting and had been informed of their due process rights. The form so indicating was signed by one of the parents.

In May of 1986 the parents requested an IEP meeting to discuss funding of Philip's placement at PCC. This resulted in an assessment of Philip and the development of an IEP. Finally, in December of 1986 an IEP was drafted and signed by the participants at the meeting which consisted of the PCC staff, the District and Los Prados staffs, and the parents, with Philip's mother signing off on the IEP. The parents were assisted in the IEP process by a professional educational consultant. The IEP provided for placement in an integrated highly structured comprehensive program with a one-to-one ratio time to be determined, the provision of speech and language therapy in three twenty-minute individual sessions and one twenty-minute session with parents weekly, the provision of adaptive physical education for forty minutes weekly, and the provision of individual psychotherapy for sixty minutes weekly, broken into segments, along with collaborative parent therapy at least weekly. *See* Ex. A-8. The IEP included the incorporation of goals and objectives already formulated by PCC. The District determined that Philip's needs could be met at Los Prados and the services required by the IEP could be provided by Los Prados. A follow-up meeting of the IEP team was conducted in January of 1987 with the IEP team recommending placement at Los Prados employing the program developed at the December meeting and a detailed transition plan for Philip's return to Los Prados from PCC. The district agreed to fund Philip's educational program at Los Prados and the costs of PCC during the transition period. The final January 1987 IEP was signed by the District participants, Philip's mother and their professional consultant.

3

Thereafter, and after observing the Los Prados Program, the parents notified the District on February 20, 1987 that they did not believe the Los Prados Program was appropriate for Philip and cancelled the transition plan. The District declined the PCC placement for the transition period and plaintiff's brought this action for retroactive reimbursement, prospective placement at PCC and transportation to that program.

The threshold question is whether the District can provide an "appropriate public education" designed to meet the unique needs of Philip along with the services that are necessary to assist him to benefit from the instruction and consistent with his IEP. This requires instruction tailored to the specific child's needs with sufficient supportive services to accomplish the purpose of the instruction. Generally, the agreed to IEP will express the targeted goals and the means to achieve them. Any disagreement the parents have with the IEP may be raised in a due process hearing.

In the first instance, in 1985, the parents unilaterally removed Philip without seeking a due process hearing. In the second instance, in 1986, they agreed to the IEP which was signed by Philip's mother in January 1987. Then, in February 1987 they notified the District they believed the Los Prados program was not appropriate for Philip and were cancelling the transition plan provided for by the agreement. When the District declined to fund the PCC placement they instituted this action.

First of all, the court has reviewed the findings and conclusions of the ALJ contained in his decision. Having also reviewed the hearing transcripts of the testimony and other evidence before him, the court finds that his decision comports with the testimony of the witnesses. Therefore, it is appropriate to look to his summary. The thrust of the issues before the ALJ is substantially similar to those raised before this court. Plaintiffs' primary focus is on the importance of one-to-one instruction and services. They compare the Los Prados program to the one Philip was receiving at PCC where the extent of one-to-one teaching and therapy was greater. They also compare the student-teacher ratio at the two programs and argue that in the latter program the ratio is smaller, thus allowing more time for teachers or program aides to work with the student. There does not appear to be that much disparity in the curriculum of the two programs; it is more a question of the

style or approach used.. For students at Philip's level of functioning it appears that the curriculum is substantially the same. The focus is on learning techniques, behavioral and language development, social and self-help skills and psychomotor and other functions. Any substantive differences in the curriculum are minimal.

The ALJ found that Philip "does not require one-to-one for his full day" as argued by plaintiffs" and that even at PCC Philip was receiving approximately 50% of his day in one-to-one "academic and behavioral intervention". *See* Ex. A, Decision of ALJ, at p.3. After discussing the programs and instruction available at the two schools, Los Prados and PCC, the ALJ concluded that the personalized program required for Philip could be implemented at Los Prados.

The parents' educational consultant testified before the ALJ, but not before this court. In the administrative proceedings he testified that Philip requires a "small structured classroom setting with a teacher to pupil ratio of one teacher to not more than five pupils" and "one-to-one prompting", but not "one-to-one on a full day basis." *Id.* at p.2. The ALJ found that Los Prados could meet the requirements plaintiffs sought. However, plaintiffs seem to have moved the goal posts on these proffered requirements since the time of the administrative hearing, for they now argue for a full day of one-to-one and an even lower teacher-student ratio.

The court has carefully considered the testimony of all the witnesses in this case including, of course, those called by plaintiffs. It is important to point out that there is no dispute as to the qualifications of the witnesses called by the parties as experts. One of them, an expert educational consultant, Dr. Marly Perkins, testified in the administrative hearing as to Philip's learning level and limitations. She agreed that the program at Los Prados could be individualized to provide adequate one-to-one for Philip by "rearranging staffing", removing the "two to three high functioning pupils" from the classroom setting, and "restructuring of the curriculum". She also testified in this court and asserted that Philip required one-to-one instruction for most if not all of the day. She conceded that if his IEP was changed to include the one-to-one instruction she proposed, Los Prados could provide that instruction because of its flexibility. Finally, she acknowledged that the test she is using in determining what is an appropriate education is that autistic children "need the best".

1	Dr. Diane Kirchner, who did not testify in the administrative proceeding, testified before this court. She is a speech/language therapist. Dr. Kirchner testified that Philip needs one-to-one all the time in order to be productively engaged, maintain attention and participation. She also testified that the Los Prados group to which Philip was and would be assigned was more independent and higher functioning than Philip and, thus, was not an appropriate placement. Her understanding of the curriculum and approach of Los Prados is at odds with the testimony of several of the professionals and workers from Los Prados who testified at trial.

Pam Vorce, who works one-to-one with Philip at PCC, testified as to her observations of Philip and his participation in the PCC program in both the administrative and court hearings. She is an accredited speech and language practitioner. She described his attention, language and social-interactive deficits, and self-stimulating behaviors. She acknowledges that she has not observed and is not familiar with the program at Los Prados. She also acknowledges that she has a very strong bias toward one-to-one teaching.

The court heard several witnesses who are professionals or work at Los Prados, most of whom have worked with Philip. Some of them testified in the administrative hearing. Their descriptions of Philip's needs, learning ability and behavior are consistent with the other testimony and record in this case. They are also consistent in their belief that Philip's exceptional needs which qualify him for special education and are as set forth in his IEP can be met by the Los Prados program and that the program is and can be individualized in such a manner as to provide him with an appropriate public education.

Philip's mother testified at the court hearing. She, of course, disagrees with this opinion. Certainly, as any parent, she wants the best for her child and believes that the program at PCC best meets her expectations. However, as explained below, even considering the California educational standards in addition to the requirements of the EHA, the law does not require the "best". The requirements of the law are set forth below.

CONCLUSIONS OF LAW

This court has jurisdiction over this action pursuant to the Education of the Handicapped Act

("EHA"), 20 U.S.C. sections 1415(e)(2) and (e)(4), and section 504 of the Rehabilitation Act of 1973. Although those are the statutes invoked in the complaint filed in this action, the parties proceeded to trial only under the EHA. In fact, the analysis and result would be no different under section 504 since the current statute, 20 U.S.C. § 1415(l), codifies the earlier developing case law. That subsection provides that "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available" under a number of other enumerated statutes including 29 U.S.C. § 791 *et seq.*, "except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures" under the IDEA, the successor to the EHA, have been exhausted "to the same extent as would be required had the action been brought under this subchapter [the IDEA]."[1] The rationale for this requirement was the same before the enactment of the current version of section 1415(l), namely, that the EHA and its successor statutes provide a detailed procedural regimen that should not be supplanted by a less rigorous one.

The EHA requires that every handicapped child be provided a "free appropriate public education" ("FAPE") tailored to the needs of the handicapped child by the development of an "individualized educational program" or IEP. *See* 20 U.S.C. §§ 1412 and 1401. A "free appropriate education" consists of a program designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the program. *Board of Education of the Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982). There is no one-size-fits-all program of instruction. The program must meet the needs of the individual child. On the other hand, "[a]n 'appropriate' public education does not mean the absolutely best or 'potential-maximizing' education for the individual child." *Gregory K. v. Longview School Dist.*, 811 F.2d 1307, 1314 (9th Cit.1987). It must be a program that is "reasonably calculated to provide... [the particular student] with educational benefits." *Id.*

The EHA lays out a detailed procedure for the assessment of the student and the development of the IEP with parental involvement and due process guarantees, including an administrative hearing before a designated state agency. The findings of the hearing officer are a part of the record that the district court receives if an appeal is taken from the officer's determination. On review the

district court shall consider the record of the administrative proceedings, additional evidence presented by the parties, and render a decision based on a preponderance of the evidence, granting such relief as the court determines is appropriate. *See* 20 U.S.C. § 1415. "Due weight" is to be given to the administrative proceedings. *Rowley*, 458 U.S. at 206. Greater or "substantial weight" should be given to the hearing officer's decision when it "evinces his careful, impartial consideration of all the evidence and demonstrates his sensitivity to the complexity of the issues presented. *County of San Diego v. California Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir.1996) (quoting *Ojai Unified Sch.Dist. v. Hackson*, 4 F.3d 1467, 1476 (9th Cir.1993)).

However, the review by the district court is not *de novo*. The court must make its own independent judgment based upon the testimony it hears and the "due weight" it gives to the hearing officer's findings and conclusions. The court is not to substitute its own judgment for that of "sound educational policy" of the school. *Rowley*, 458 U.S. at 206. Thus, the court looks to the soundness of the school's decisions and the soundness of the hearing officer's determination, and, taken together with the testimony heard at trial, makes its own decision within the confines of and consistent with the statute.

Parents who believe that their public school is not providing a FAPE may unilaterally remove their disabled child from the school, place him in another educational institution including a private one, and seek reimbursement for the alternate placement. *School Committee of Burlington v. Dep't of Education.*, 471 U.S. 359, 374 (1985). That is what occurred in the case at bar. However, parents may only obtain reimbursement if the court determines that the public school placement did not comply with the EHA and the alternate placement was appropriate under the statute. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (2009). Thus, the threshold question here is whether the program provided by the defendants satisfied the requirements of the EHA. If it does, then the parents are not entitled to reimbursement; if it does not, then the court needs to reach the reimbursement issue.

Based upon the court's findings above, the court concludes the preponderance of the evidence establishes that the unchallenged IEP of 1984 and the program instituted pursuant to it provided the

required FAPE. In connection with the 1986 IEP and the unilateral removal of Philip from Los Prados in 1987, the court concludes based upon the above findings, that the preponderance of the evidence established that the District complied with the FAPE requirements and was prepared to proceed with the placement it offered. And, further the court concludes that the FAPE and placement offered satisfied the District's obligations under the EHA.

These conclusions are not changed by the argument that California law requires a greater burden. Reviewing the California Education Code provisions and the pertinent California Regulations, relied upon by plaintiffs, shows that they do not place any greater responsibility on the District than that required by the EHA. The only possible provision that might suggest otherwise is at 5 Cal. Admin. Code section 3001(b) which states that an educational program under the FAPE requirement "shall provide the equal opportunity for each individual with exceptional needs to achieve his or her full potential, commensurate with the opportunity provided to other pupils." The court does not read this as a "potential-maximizing" requirement, unlike the statutes of some other states cited by plaintiffs. California's regulation limits the "full potential" language to opportunities "commensurate" with those of other students. There is no evidence in the record as to what the opportunities for other students are or how they would be measured. Indeed, the whole purpose of the EHA itself is to achieve that within the framework of the Act. Therefore, the court concludes that California law does not provide a higher standard than the EHA.

CONCLUSION

Based upon the foregoing findings and conclusions, the court finds that plaintiffs have failed to establish by a preponderance of the evidence that they are entitled to the relief sought with respect to placement and reimbursement and judgment will be entered accordingly.

IT IS SO ORDERED.

Dated: Sept. 28, 2012

MARILYN HALL PATEL
United States District Judge

9

**ENDNOTES**

1. The Individuals with Disabilites Education Act ("IDEA") was enacted in 2004 and amended the EHA, which also had been amended several times after its adoption. Both acts were codified at 20 U.S.C. section 1401 et seq.